**MERCANTILE NATIONAL BANK AT DALLAS, Independent Executor of the Estate of Wyatt C. Hedrick, Deceased, Appellant,**

v.

**R. A. HUDGENS, Appellee.**

**No. 16795.**

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 10, 1967.

Rehearing Denied March 10, 1967.

McDonald, Sanders, Wynn, Ginsburg, Phillips & Maddox and Atwood McDonald, Fort Worth, for appellant.

Baker, Jordan & Foreman, and Joe N. Boudreaux, Dallas, for appellee.

OPINION

MASSEY, Chief Justice.

Form of the suit was on contract for the furnishing of labor and materials in connection with a sizeable painting contract, fully accomplished on the part of R. A. Hudgens, plaintiff, and done in connection with the refurbishing of a hotel in Augusta, Georgia.

In connection with the portion of the contract sued upon, same was alleged to be the obligation of Wyatt C. Hedrick, now deceased, for the estate of whom the Mercantile National Bank at Dallas became independent executor. Thus the bank became defendant in plaintiff's suit.

Following a jury trial judgment was rendered upon verdict in favor of plaintiff, for the full amount allegedly owing under the painting contract. Pursuant to stipulations judgment was furthermore rendered in behalf of the plaintiff for attorney's fees, if and in the event an award of attorney's fees were proper under the provisions of Vernon's Ann.Tex.St. Art. 2226, "Attorney's fees".

We hold that plaintiff was justly entitled to the judgment in the amount representing the unpaid balance of his painting contract, but he was not entitled to recover attorney's fees.

In 1963 there was in existence a corporation called the Bon Air Hotel, Incorporated. Its only property was a hotel building and premises in Augusta, Georgia. Said building was an old one. The corporation proposed to refurbish and restore it. It was particularly desired by Mr. Wyatt C. Hedrick that the work be completed for the hotel to be opened in time for the annual "Master's Golf Tournament" in 1964.

Hedrick was majority stockholder in the Hotel corporation. By March 20th, 1964 Hedrick had also become a substantial creditor thereof. The corporation owed him approximately $65,000.00. It developed that the corporation was under-capitalized, and a few days before March 20th, 1964, the officers thereof had informed plaintiff that it could not pay him the amount of $28,574.95 contractually scheduled to be paid as of March 1, 1964. Plaintiff's painting contract was with the Hotel corporation. It provided for payments as the work progressed.

Plaintiff prepared to call his workmen off their jobs at the hotel, and to stop deliveries of materials incident to completion of the painting work. Officers of the Hotel corporation discussed with him the probability that something might be arranged by or through Mr. A. B. Cadenhead, a representative of Mr. Hedrick, who was to come to Augusta from Fort Worth, Texas. Plaintiff was aware that Hedrick was the principal stockholder of the corporation and that the corporation had less than $100.00 on hand.

Upon Mr. Cadenhead's arrival the plaintiff met him on the job site. Plaintiff was then aware that the Hotel corporation could not pay the $28,574.95 for the work he had done under the contract up to March 1, 1964, nor for the work done since March 1, 1964 upon which no bill had been figured, but which would amount to approximately $11,000.00. Plaintiff was also aware that additional work to be done by him to complete the contract would amount to approximately an additional $11,000.00. Plaintiff was in difficulty with financing institutions from which he had borrowed in order to have the funds necessary to pay his employees and purchase materials in connection with his hotel contract.

Cadenhead represented to plaintiff in the presence of the officers of the Hotel corporation that he was Hedrick's "aide-de-camp", holding the official title of "manager of projects". His inquiries were directed to ascertaining what was necessary to be done in order to induce plaintiff to finish his contract for work on the hotel. Plaintiff told him that he was badly bent. His financial difficulties were explained. He told Cadenhead that he had to close the job down unless he could get some assurances that his money was forthcoming and that the compensation due him under the contract would be paid when the job was completed. Cadenhead assured him that the bill he had submitted for work up to March 1, 1964 would be paid. Cadenhead made inquiry as to the percent of completion of plaintiff's obligations under his contract, and was assured that if the necessary arrangements were made plaintiff's work could be performed in time for and so that the hotel would be open for the "Master's Golf Tournament". Cadenhead stated that Hedrick was particularly interested in expediting the work in order that the hotel would be open at that time since hotel reservations had been "booked solid" in expectation that it would be timely opened. The

parties parted, with arrangements made for further communication after Cadenhead had talked by telephone with Mr. Hedrick.

The following morning, after Cadenhead had conversed by telephone with Hedrick, he talked with plaintiff also by telephone. Arrangements and promises were then made by reason of and as the result of which plaintiff alleged that he was induced to and did complete the painting contract upon the hotel building.

The undisputed evidence material to the case is as follows: 1. Hedrick would immediately send cash to the Hotel corporation which would pay over to plaintiff $7,-000.00 in cash; 2. Hedrick would forward for delivery to him two promissory notes, each in the amount of $10,787.48, one of which would be payable on or before fourteen (14) days from March 23, 1964, and the other payable on or before twenty-eight (28) days from March 23, 1964. 3. Hedrick would forward for delivery to him a financial statement for use in allaying the fears of plaintiff's financial backers. Hedrick performed these promises.

The disputed matters are as follows: Plaintiff would complete the job as per his original contract, submitting his bill direct to the Hotel corporation, through the agency of which Hedrick would make payment to plaintiff by sending the balance to be paid to the corporation in order that it would run the account through on its books, but promptly deliver said balance over to him. Nothing was said or arranged in the nature of showing on any billing the segregable amount due and owing for the period March 1, 1964 to March 20, 1964. The billing would be as though there had never been any difficulty of any kind. Under the plaintiff's understanding of the agreement he completed the painting contract. A final bill was submitted by him to the Hotel corporation in the amount of $22,-211.35. It promptly was presented as well to Hedrick. Propriety of the amount is not disputed. The dispute is whether Hedrick was obligated to pay it.

It was the contention of Wyatt C. Hedrick and A. B. Cadenhead that the latter neither had, nor ever represented that he had authority to bind the former to make compensation therefor to plaintiff. Further, it was their contention that plaintiff had agreed to complete the painting contract under the original contract, wherein the obligor to make payment therefor was the Hotel corporation. It was asserted that Hedrick never promised to be responsible for the payment of the same or any part thereof, either primarily or secondarily. As noted, the case proceeded to trial with the pleading of the defendant to the effect that in the event it be found that there was any promise on the part of Hedrick to pay the same or any part thereof such would be unenforceable under the Statute of Frauds. The defense having been plead it became the burden of the plaintiff, as the party seeking to enforce the oral agreement, to show that the statutory provisions were inoperative. 26 Tex.Jur.2d 307, "Frauds, Statute of", § 136, "Burdens".

As the case went to the jury plaintiff chose to bracket Special Issues 1 to 7, inclusive, wherein inquiry was made relative to that part of the balance owing as of March 20, 1964, or up to the date of plaintiff's conference with Mr. Cadenhead. He chose to bracket Special Issues 8 to 14, inclusive, wherein inquiry was made relative to that part of the balance which accrued subsequent to March 20, 1964. Obviously, the jury could have found by its answers that there was an assumption of primary liability by Mr. Hedrick for the work done subsequent to the occasion of plaintiff's agreement with Cadenhead, but that there was not a similar agreement concerning the work previously done. However, the jury findings on all these issues were for the plaintiff. Essentially, the findings amounted to a declaration by the jury that Mr. Cadenhead promised plaintiff that Mr. Hedrick would personally pay the entire amount; that he did so as Hedrick's agent, acting within the scope of his authority as such (actual or implied); and that further-

more Cadenhead had apparent authority to so promise in behalf of Hedrick, and that plaintiff relied thereon in good faith and in the exercise of ordinary care, when he proceeded to complete the contractual painting work on the hotel.

By its answer to Special Issue No. 15 the jury found that Mr. Hedrick, personally,—as distinguished from a stockholder in the Hotel corporation—received benefits by reason of the work done by plaintiff after March 1, 1964. By its negative answer to Special Issue No. 16 the jury refused to find that the promises of Hedrick, through his agent, would be binding upon him only in the event the Hotel corporation failed to pay plaintiff. There is an argument concerning the matter of whether Special Issue No. 16 is an inferential rebuttal issue, but we believe it is obviously an issue upon which the defendant carried the burden, in the hope and belief that an affirmative answer thereto would establish the defense asserted under the Statute of Frauds to part, if not all, of plaintiff's claim.

We are of the opinion that there was adequate evidence to support the answers returned by the jury to every special issue submitted, and that the jury finding as to each special issue was not against the great weight of the evidence. The court did not err in overruling the motions of the defendant for judgment *non obstante veredicto*. We also hold that the verdict supported the rendition of judgment for the plaintiff.

From what is stated above it is our conclusion that the agency of Cadenhead for Hedrick was established by the jury findings.

As already noted the jury findings returned were furthermore directed to the matter of whether Hedrick undertook and contracted to be primarily liable to plaintiff, i. e. to personally pay plaintiff's compensation due and owing for the period from March 1, 1964 to March 20, 1964, and

thereafter to become due and owing for the period after March 20, 1964. There were no special issues inquiring upon the matter of consideration moving from plaintiff to Hedrick other than by Special Issue No. 15. Evidence of such is readily perceivable in connection with plaintiff's performance after March 20, 1964. Everyone was aware that the Hotel corporation had run out of money and credit. The subsequent performance by plaintiff was demonstrated to have been performed on Hedrick's credit. There was further testimony to the effect that part of the reason for plaintiff's performance after March 20, 1964 was Hedrick's promise that he would shoulder the Hotel corporation's previously existing duty to pay plaintiff the amounts due under said corporation's contract with him accrued because of plaintiff's performance thereunder between March 1, 1964 and March 20, 1964, coupled with the fact that plaintiff's further performance under the contract was in fact or apparently desired by Hedrick for his own pecuniary or business advantage, rather than in order to merely accommodate the Hotel corporation. There were no special issues directly relating thereto. Had they been submitted such issues would have been necessarily referable to those which were submitted as part of plaintiff's theory of recovery. There was no objection because they were not submitted. Under the circumstances answers thereto would be deemed as found in favor of the plaintiff in support of the judgment. Texas Rules of Civil Procedure 279, "Submission of Issues".

As applied to the plaintiff's performance after March 20, 1964, the situation is not to be distinguished from the case in which one supplies goods, wares and merchandise to a third person to whom it is not obliged to furnish such upon the credit of him who promises to make compensation therefor. It is settled that such a promise is enforceable at law.

As applied to the liability of Hedrick for the payment of plaintiff's accrued com-

pensation during the period between March 1, 1964 and March 20, 1964 we have encountered some difficulty.

In part supported by language found in the Supreme Court decision of Gulf Liquid Fertilizer Co. v. Titus, 163 Tex. 260, 354 S.W.2d 378 (1962), are declarations upon the law to be found in the Restatement of the Law, Contracts, under Chapter 8, "The Statute of Frauds".

Section 178 thereof, "Classes of Contracts Within the Statute of Frauds", reads: "(1) The following classes of informal contracts are by statute unenforceable unless there is a written memorandum thereof signed by the party against whom enforcement of the contract is sought, or by some person thereunto authorized by him:

"Class I. * * *

"Class II. Contracts with an obligee to answer to him for the debt, default, or miscarriage of his obligor; * * *."

Subsequently, under Topic 2, "Contracts Within Class II of § 178. (Contracts with an Obligee to Answer For the Obligor's Debt, Default or Miscarriage.)" is to be found § 180:

"§ 180. A Promise to Satisfy the Duty adopted, though the Statute does not so the Promisor is a Surety.

"Except as stated in §§ 182–184 and 187–189, a promise to perform or otherwise satisfy all or part of a duty of any kind by which another person is then bound or thereafter becomes bound to the promisee, is within Class II of § 178 if the promisor by virtue of his contract or relation with such other person is a surety for him, and the promisee knows or has reason to know of the suretyship relation.

"*Comment*:

"a. The Section states the general rule defining the cases that fall within Class II. The other Sections in this Topic state subordinate rules, for applying or limiting the general rule.

"b. As the words of the Statute state, to bring a case within Class II there must be a duty of another person to render the performance for which the contractor undertakes to be answerable. All kinds of duties recognized by law, whether already incurred or to be incurred in the future, are included within the statutory words, 'debt, default or miscarriage of another,' or corresponding words, in statutes relating to contracts included under Class II of § 178. The duty of the other person may not only be conditional, but even voidable, or unenforceable. The person owing the duty is called the principal debtor or obligor.

"c. By an interpretation universally adopted, through the Statute does not so provide in terms, a contract to answer for the debt, default or miscarriage of another is not within its scope, unless the promisee is the person to whom the debt is owing, or who is entitled to damages for the default or miscarriage.

"d. It is essential also in order to bring a promise within Class II that the promisor, by virtue of his relation with another person who is bound for the same debt, default or miscarriage, shall be a surety for the latter, and that the obligee knows or has reason to know of the suretyship relation.

"e. Whether two persons bound for the same performance are principal and surety depends on their contract or relation with one another, and may neither appear in the terms of the contract of either of them with the promisee, nor be known to him from extrinsic facts. A surety's promise may be in terms absolute or it may be in the form of a guaranty. The essential element of the relation is that the principal debtor shall be subject to a duty to the surety to exonerate him.

"f. A person has 'reason to know' a fact when he has such information as would lead a person exercising reasonable care to acquire knowledge of the fact in question or to infer its existence.

"*Illustrations*:

"* * *

"4. In consideration of the delivery of goods by C to D, S orally promises to pay the price of them. S's promise is not within Class II, since D is under no duty.

"* * *

"8. D contracts with S to build a house for S. C contracts with D to furnish materials for the purpose. D in violation of his contract with C fails to pay C for some of the materials furnished, and C justifiably cancels his contract with D. S orally promises C that if C will continue to furnish D with materials that C has previously agreed to furnish, S will pay the price therefor. C does so. S's promise is not within Class II because D is not bound to pay C for the materials supplied in consideration of S's promise."

Section 183 of the Restatement, "A Promise in Satisfaction of the Duty of Another" reads: "A promise that is itself accepted in satisfaction of a previously existing duty of a third person to the promisee is not within Class II of § 178.

"*Comment*:

"a. This Section relates to novations. It makes no difference whether the new promisor promises the same performance as that formerly due from the first obligor or a *different* performance. The promise is not one to answer for another's duty, since that other ceases to be under a duty when the new promise becomes binding. The case must be distinguished where performance of the new promise—not the promise itself—is to be taken in satisfaction of the old duty."

■ This doctrine is followed in Texas. See Warren v. Smith, 24 Tex. 484 (1859); Harp v. Hamilton, 177 S.W. 565 (Amarillo Civ.App., 1915, no writ hist.); Rollison v. Hope, 18 Tex. 446 (1857); Blankenship & Blake Co. v. Tillman, 18 S.W. 646 (Court of App. of Tex., 1892, no writ hist.). The matter of consideration sufficient to support

the promise of the new obligor is not considered under Section 183. However, such is treated in Section 184.

Section 184 of the Restatement, "A Promise, the Consideration of Which is Desired for the Promisor's Advantage" reads: "Where the consideration for a promise that all or part of a previously existing duty of a third person to the promisee shall be satisfied is in fact or apparently desired by the promisor mainly for his own pecuniary or business advantage, rather than in order to benefit the third person, the promise is not within Class II of § 178, unless the consideration is merely a premium for the promisor's insurance that the duty shall be discharged.

"* * *

"*Illustrations*:

"1. D contracts with S to build a house for S. C contracts with D to furnish materials for the purpose. D, in violation of his contract with C fails to pay C for some of the materials furnished. C justifiably refuses to furnish further materials. S orally promises C, that if C will continue to furnish D with materials that C had previously agreed to furnish, S will pay the price not only for the materials already furnished but also for the remaining materials if D fails to do so. S's promise is enforceable.

"2. D owes C $1000. C is about to levy an attachment on D's Factory. S, who is also a creditor of D's, fearing that the attachment will ruin D's business and thereby destroy his own chance of collecting his claim, orally promises C that if C will forbear to take legal proceedings against D for three months, S will pay D's debt if D fails to do so. S's promise is enforceable.

"3. D owes C $1000. C is about to levy an attachment on D's factory. S, who is a friend of D's desiring to prevent his friend's financial ruin, orally promises C that if C will forbear to take legal proceedings against D for three months S will pay D's debt if D fails to do so. S has no purpose

to benefit himself and C has no reason to suppose so. S's promise is not enforceable.

"4. C, a bank, discounts negotiable promissory notes of D, a corporation. D becomes financially involved. An official bank examiner threatens to close the bank on account of the impairment of its assets because of the loans to D. S, a shareholder of the bank, in consideration of forbearance by the examiner, orally promises the bank that if D fails to pay the note, he will do so. The promise of S is enforceable."

Section 184 of the Restatement is the subject of treatment in the Supreme Court case of Gulf Liquid Fertilizer Co. v. Titus, supra. On page 387 of the South Western Reporter it is stated as applied to the case there under consideration:

"This opinion has stated that the courts have used two or more of the following tests to determine whether an oral promise is outside of the Statute of Frauds: (1) the promise was made to subserve some main purpose of the promisor, Titus; (2) the promisor, Titus, agreed to become primarily liable for the debt of the debtor, Stracner, and not simply or only to act as a guarantor or surety; and (3) the promise was supported by consideration. We have also held that there is evidence to satisfy all three tests in this case. We are safe in saying that whatever test is used, the promise must be supported by consideration."

We believe, and here hold that the same could properly be said in respect to the material transaction in the instant case, assuming that the applicable law is not as stated in Section 183 of the Restatement. In either event the law would be with the plaintiff. Although not thereto confined, the best of the *Illustrations* found under the Sections from the parts of the Restatement hereinabove copied is *Illustration* 1 under Section 184. It could as well have recited "labor and materials" instead of merely "materials", as was done. To rewrite it so that it does so would be as good a statement of the law.

The evidence in the case at hand is such that the jury was entitled to believe, as it did, that the promise of Hedrick to plaintiff, made by and through his agent, was in no way conditional upon the Hotel corporation failing to pay the plaintiff. If it had been so conditioned Hedrick would nevertheless be liable in view of Hedrick's promise relative to making payment for labor and materials under the contract after March 20, 1964.

On the matter of attorney's fees: Plaintiff did not contract to perform any labor himself. The labor performed was furnished pursuant to contract, by employees of plaintiff. Furnishing of the materials by the plaintiff was pursuant to the performance of the labor necessary to incorporate said materials into the building as part of the work contracted.

Plaintiff's claim, essentially, is one based on a special contract which covered both the supplying of labor and material, and one in which attorney's fees are not recoverable. Vernon's Ann.Tex.Civ.St. Art. 2226, "Attorney's fees", is penal in nature and should be strictly construed. Davenport v. Harry Payne Motors, 256 S.W.2d 245 (Austin Civ.App., 1953, no writ).

As was pointed out in Kirkwood & Morgan, Inc. v. Roach, 360 S.W.2d 173, 177 (San Antonio Civ.App., 1962, writ ref. n. r. e.), "It is true that appellee performed some labor in dumping and spreading the sand which was furnished by appellant. However, this suit was for damages for breach of contract and not for labor done. Hicks v. Smith, Tex.Civ.App., 330 S.W.2d 641. The award for attorney's fees was not proper in this case. Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75." See also Ford Motor Company v. Davis Brothers, Inc., 369 S.W.2d 664, 668 (Eastland Civ.App., 1963, no writ), a case of similarity to the instant case, in which the court held that the plaintiff's cause of action was based upon special contract and did not come under the provisions of Art. 2226.

It is also quite certain that plaintiff's charges, as in any properly run similar business, included a margin of profit above recoupment of costs (to him) of labor and materials. They would also have included costs such as taxes and insurance. Van Zandt v. Fort Worth Press, 359 S.W.2d 893 (Tex.Sup.1962).

Judgment is reversed in so far as it grants attorney's fees. In all other respects it is affirmed. All costs are taxed against appellant.