**PRAVEL, WILSON & MATTHEWS, Plaintiff-Appellee,**

v.

**Robert J. VOSS, Defendant-Appellant.**

**No. 72–1991.**

United States Court of Appeals, Fifth Circuit.

Jan. 18, 1973.

Ronald L. Clower, Dallas, Tex., for defendant-appellant.

C. L. Ray, Jr., Ronald Ned Dennis, Jim Ammerman, Marshall, Tex., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

THORNBERRY, Circuit Judge:

This Texas diversity case plunges us into the murky waters of implied promises and "leading objects." We emerge convinced that the judgment should be affirmed.

The instant suit was brought by appellee law firm to recover the reasonable value of services rendered in connection with an unsuccessful patent infringement suit filed by V & S Ice Machine Company, a shell corporation organized solely to hold the patent on an "ice blade" and to conduct patent infringement litigation. Appellant Voss, president of the corporation and holder of twenty per cent of its stock, was the defendant below. In late 1969, Jere Albright, another V & S stockholder, consulted Guy Matthews, a partner in the law firm, about the pending infringement suit, and informed him that no patent attorney had been retained, although a pretrial conference was scheduled for two weeks hence and the trial was one month away. Matthews agreed to take the case, after informing Albright of the firm's customary fees and cautioning him that Matthews and another partner, Coke Wilson, would have to devote all their time to the case to insure any chance of success. Upon

**1188**

learning that V & S was a mere shell, Matthews sought an assurance from Albright that the firm would be paid for their services; Albright replied that neither he nor the corporation could pay the fee, and referred Matthews to Voss, who he said made all the corporation's decisions.

Following the pretrial conference, Matthews contacted Voss for the first time, telling him that the case was in "bad shape" and that the firm's fee for handling the case through trial would be between ten thousand and twenty thousand dollars. Voss told Matthews to "go for broke", and agreed to having a second partner work on the case. Voss attended several sessions of the trial, and indicated to Matthews that he was pleased with its progress. During the trial, Voss told Wilson, the other partner, that he viewed the litigation like any other investment, and that he was willing to spend as much as twenty-five thousand dollars in attorneys' fees because he expected that the litigation would yield a "return" of several hundred thousand dollars to him. He told Wilson that he would "take care" of the fee, and that if the lawyers were successful, they would be rewarded by a trip to Las Vegas which Voss said he had used as an incentive in some of his other business dealings.

During the course of the trial, the law firm was paid approximately five thousand dollars in checks drawn on V & S, signed "Robert J. Voss, president." Voss told the firm to postpone cashing the second of these checks until he could deposit sufficient funds in the V & S account.

V & S lost the patent infringement suit.[1] The law firm withdrew from the case, and sent several bills for approximately fourteen thousand dollars in attorneys' fees to Voss at both his home and business addresses. After the bill had gone unpaid for several months, Wilson telephoned Voss and told him that the firm was looking to him personally for payment. Voss did not dispute his personal liability, but said that the bill was larger than he had expected it to be.

In awarding appellees a quantum meruit recovery of $14,248.83, the trial court found that Voss "induced Coke Wilson and Guy Matthews to represent him and his interest in V & S Ice Machine Company" in the infringement suit and "implied a promise on his part to pay to said attorneys a sum of money equal to what their services rendered were reasonably worth. Robert J. Voss received and accepted these services." On appeal, Voss contends that he is not personally liable for the attorneys' fees. His argument is two-fold: first, that the undisputed facts do not satisfy the Texas rules governing recovery in quantum meruit; secondly, that he promised only to guarantee payment by the corporation, and since this promise was not in writing, the Texas statute of frauds[2] bars its enforcement against him.

■ Appellant's first argument is wholly without merit. The trial court's findings of fact, amply supported by the record, fully justified recovery in quantum meruit under the test stated by the Texas courts—rendition of valuable services to the defendant, and his acceptance of those services under circumstances

1. On appeal, this court affirmed. V & S Ice Machine Co. v. Eastex Poultry Co., 5th Cir. 1971, 437 F.2d 422. Our opinion in that case summarizes the lengthy history of patent infringement litigation involving V & S.

2. Section 26.01, Vernon's Texas Statutes Annotated (Business and Commerce), V.T.C.A., provides in pertinent part as follows:
(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
(1) in writing; and
(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
(b) Subsection (a) of this section applies to
(2) a promise by one person to answer for the debt, default, or miscarriage of another person . . .

that would reasonably notify him that the plaintiff expected compensation. Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031 (1937); Montes v. Naismith and Trevino Construction Co., 459 S.W.2d 691 (Tex.Civ. App.—Corpus Christi 1970, writ ref'd n. r. e.). Relying on Radio Station KBUY, Inc. v. Lieurance, 390 S.W.2d 16 (Tex.Civ.App.—Amarillo 1965, no writ), and on the fact that the firm was partially paid in checks drawn on the corporation, appellant argues that the law firm's services were rendered to and benefitted directly only the corporation. *Lieurance, supra,* involved a corporation that was active and fully capitalized at the time the debt arose, and is thus distinguishable from the instant case involving a shell corporation whose only apparent asset was the contemplated recovery in the infringement suit, in which Voss, by his own admission, would share directly. Voss could have received no more direct benefit from the firm's services had the corporation never existed. Likewise immaterial are the checks drawn on the corporation account, because in at least one instance the money to cover the checks came from Voss's own pocket.

■ Appellant's statute of frauds argument is also untenable, for several reasons. First, there is nothing in the record or in the trial court's findings to support appellant's claim that he promised to answer for a debt owed by the corporation. Voss clearly and repeatedly promised the lawyers that he personally would pay their fee. Thus, the Texas statute of frauds is simply inapplicable to this case on its facts.

■ But even if the record did disclose evidence that Voss promised to answer for a corporate debt, the law firm would nevertheless be entitled to a recovery. In the first place, the Texas courts afford recovery in quantum meruit as an alternative remedy for breach of promises rendered unenforceable by the statute of frauds. Scott v. Walker, 141 Tex. 181, 170 S.W.2d 718 (Comm. App.1943); Miller v. Graves, 185 S.W. 2d 745 (Tex.Civ.App.—Fort Worth 1945, writ ref'd).

■ Secondly, even if Voss did promise to answer for a debt of the corporation, a Texas court would undoubtedly hold that his "leading object" in making the promise was to secure a direct, personal benefit (i. e., to protect his share of the contemplated recovery), and that the promise was enforceable notwithstanding the statute of frauds. Gulf Liquid Fertilizer Co. v. Titus, 163 Tex. 260, 354 S.W.2d 378 (1962); Haas Drilling Co. v. First National Bank, 456 S. W.2d 886 (Tex.1970). Some Texas cases have refused to apply the "leading object" exception when the promisor was a shareholder in the corporation whose debt he guaranteed and the only benefit accruing to him by reason of his promise was the prospect of continued corporate prosperity, which benefitted all stockholders alike. South Spindletop Oil and Development Co. v. Toney, 15 S.W.2d 688 (Tex.Civ.App.—Beaumont 1929, writ dism'd); *cf.* Cooper Petroleum v. La-Gloria Oil and Gas Co., 436 S.W.2d 889 (Tex.1969). The promisor's purpose, however, is a question of fact, *Haas, supra;* and the Texas courts have not hesitated to apply the leading object exception in cases involving stockholders where, as here, the record compels the conclusion that the promisor could have been acting only to protect his personal interests. Mercantile National Bank v. Hudgens, 412 S.W.2d 364 (Tex.Civ.App. —Fort Worth 1967, writ ref'd n. r. e.); Walker v. Lorehn, 355 S.W.2d 71 (Tex. Civ.App.—Houston 1962, writ ref'd n. r. e.).

Affirmed.