Betty **PEREZ;** Griselda **Cantu;** Jose Javier **Hernandez;** Abigail **Meza;** Christina Marie **Lopez;** and Manuel **Cuevas, Plaintiffs,**

v.

Lidia **LEMARROY** d/b/a Joli's Orthopedic Shoes and Medical Supplies, Defendant.

Civil Action No. B–08–141.

United States District Court, S.D. Texas, Brownsville Division.

Sept. 12, 2008.

---

Kathryn J. Youker, Texas Riogrande Legal Aid, Weslaco, TX, for Plaintiff, Betty Perez, Jose Javier Hernandez, Abigail Meza, Christina Marie Lopez and Manuel Cuevas.

William H. Beardall, Jr., Equal Justice Center, Austin, TX, for Plaintiff, Griselda Cantu.

Dalinda B. Garcia, Attorney at Law, Edinburg, TX, Keith Clark Livesay, Attorney at Law, McAllen, TX, for Defendant, Lidia Lemarroy d/b/a Joli's Orthopedic Shoes and Medical Supplies.

## MEMORANDUM OPINION AND ORDER ON MOTION TO COMPEL ARBITRATION

ANDREW S. HANEN, District Judge.

Plaintiffs Betty Perez, Griselda Cantu, Jose Javier Hernandez, Abigail Meza, Christina Marie Lopez and Manuel Cuevas (collectively the "Plaintiffs") filed this action on May 6, 2008 against Defendant Linda Lemarroy ("Lemarroy") alleging violations of the Fair Labor Standards Act ("FLSA") arising out of the Plaintiffs' employment relationship with Lemarroy's business, Joli's Orthopedic Shoes and Medical Supplies. Lemarroy answered the Complaint on May 23, 2008, asserting that the plaintiffs had failed to seek relief in arbitration. Lemarroy then filed a Motion to Compel Arbitration on June 19, 2008. She asserts that each Plaintiff signed an employment contract containing a valid and binding arbitration provision that requires that Plaintiffs' FLSA claims be submitted to arbitration. Plaintiffs do not deny signing the agreement, but contend that the arbitration provisions are unenforceable, or in the alternative, that Lemarroy failed to satisfy conditions precedent under the arbitration provision prior to seeking the arbitration of the Plaintiffs' claims.

■ The Fifth Circuit requires a two-step inquiry to determine whether a party should be compelled to arbitrate a dispute. *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir.2004). The first step is to determine whether the parties agreed to arbitrate the dispute. *Id.* (citing *R.M. Perez & Assocs., Inc. v. Welch,* 960 F.2d 534, 538 (5th Cir.1992)). Then the court considers whether any federal statute or policy renders the claims non-arbitrable. *Id.* Throughout the inquiry, the court must not consider the merits of the underlying action. *Id.* (citing *Snap–On Tools Corp. v. Mason,* 18 F.3d 1261, 1267 (5th Cir.1994)).

■ To decide whether the parties agreed to arbitrate, the court must determine: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Hill,* 367 F.3d at 429 (citing *Webb*

*v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir.1996)). These questions are decided according to state law, here being the law of Texas. *See id.* If the party opposing arbitration raises a defense that does not specifically relate to the arbitration agreement, the defense must be submitted to the arbitrator as part of the underlying dispute. *Hill*, 367 F.3d at 429 (citing *Primerica Life*, 304 F.3d at 472). While there is a strong federal policy favoring arbitration, this policy does not apply to the court's initial determination as to whether there is a valid agreement to arbitrate. *Id.* (citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir.2003)). Once the court finds that an agreement to arbitrate exists, all ambiguities must be resolved in favor of arbitration. *Id.* (internal citations omitted).

Plaintiffs object to the validity of the arbitration clause on three grounds: (1) lack of assent; (2) lack of mutuality; and (3) procedural and/or substantive unconscionability. Plaintiffs further assert that Lemarroy failed to comply with a condition precedent to arbitration by failing to mediate prior to seeking arbitration and failing to file her motion to compel arbitration within thirty days of being served with Plaintiffs' Complaint.

### A. *Parties' Assent*

■ Plaintiffs Abigail Meza, Christina Marie Lopez and Manuel Cuevas assert that their arbitration provisions are unenforceable because Lemarroy did not sign their employment agreements. The lack of Lemarroy's signature on the employment agreement would appear to go to the enforceability of the entire agreement, not simply the specific arbitration provision contained within the agreement. Issues regarding the enforceability of the entire agreement must be submitted to the arbitrator as part of the underlying dispute.

*Hill*, 367 F.3d at 429 (citing *Primerica Life*, 304 F.3d at 472).

■ Nevertheless, even if this Court were to construe Plaintiffs' claims as asserting that the lack of Lemarroy's signature related solely to enforceability of the arbitration clause, such allegations do not make the arbitration provision invalid. A party may be bound by an agreement to arbitrate even absent her signature. *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir.1987); *see ABB Kraftwerke Aktiengesellschaft v. Brownsville Barge & Crane, Inc.*, 115 S.W.3d 287, 292 (Tex.App.-Corpus Christi 2003, pet. denied) (citing *Simmons & Simmons Contr. Co., Inc. v. Rea*, 155 Tex. 353, 286 S.W.2d 415, 418 (1955)); *but see In re Bunzl U.S.A.*, 155 S.W.3d 202, 209 (Tex.App.-El Paso 2004, pet. denied) (holding the presence or absence of signatures is relevant to determining whether the contract is binding). The Federal Arbitration Act ("FAA") only requires that an arbitration clause be in writing, without any requirement that an arbitration clause must be signed, thus, no signatures are necessary to bind parties to an arbitration agreement. *See* 9 U.S.C. § 2; *Lora v. Providian Bancorp Servs.*, No. EP–05–CA–045–DB, 2005 WL 1743878, at *3 (W.D.Tex. July 22, 2005). In *Lora*, the lack of the employer's signature on an employment agreement did not prevent the employer from enforcing the arbitration clause. *Id.*

■ The question of whether a written contract must be signed to be binding is a question of the parties' intent. *In re Bunzl U.S.A.*, 155 S.W.3d at 209–10. "As long as the parties give their consent to the terms of the contract, and there is no evidence of an intent to require both signatures as a condition precedent to it becoming effective as a contract, signatures are not a required factor in the making of a valid contract." *ABB Kraft-*

*werke Aktiengesellschaft,* 115 S.W.3d at 292; *see Simmons & Simmons Constr. Co. v. Rea,* 155 Tex. 353, 286 S.W.2d 415, 419 (1955). A party may also accept an agreement by receiving and accepting the benefits of the agreement. *See, e.g., In re Big 8 Food Stores, Ltd.,* 166 S.W.3d 869, 877 (Tex.App.-El Paso 2005, no pet.); *see Coleman v. Qwest Comm. Corp.,* No. Civ. A. 3:02CV2428–P, 2003 WL 223388482, at *2 (N.D.Tex. Sept. 30, 2003); *Hearthshire Braeswood Plaza Ltd. Partnership v. Bill Kelly Co.,* 849 S.W.2d 380, 392 (Tex.App.-Houston [14th Dist.] 1993, pet. denied).

■ The employment agreements for these plaintiffs contain two signature blocks, one for Lemarroy and one for the employee. The employment agreements were not signed by Lemarroy. There is no language in either employment agreement indicating that the agreement would not become effective until Lemarroy signed the document. There is also no language indicating that the presence or absence of either parties' signature would have any impact with regard to the arbitration clause. Further, in general, contracts must be signed by the party against whom enforcement is sought. *See, e.g., Mercantile Nat'l Bank at Dallas v. Hudgens,* 412 S.W.2d 364, 369 (Tex.App.-Fort Worth 1967). This condition is met here, as each of the Plaintiffs signed the employment agreement that Lemarroy is seek to enforce. The Court, therefore, finds that there is no evidence of an intent in the employment agreement to require Lemarroy's signature, or any signature for that matter, as a condition precedent to the agreement or its provisions becoming effective. *See ABB Kraftwerke Aktiengesellschaft,* 115 S.W.3d at 292; *Rea,* 286 S.W.2d at 419. Lemarroy accepted and adopted the employment agreement and its provisions, including the arbitration clause, by continuing to employ these plaintiffs. The Plaintiffs, thus, have not demonstrated a lack of assent on the part of Lemarroy, and the arbitration clause cannot be invalidated on this ground.

### B. *Mutuality and Illusory Promises*

■ Plaintiffs also assert the arbitration provision fails for lack of mutuality. The arbitration clause requires employees to arbitrate all disputes they may have against Lemarroy, but the clause and other paragraphs in the agreement do not require Lemarroy to arbitrate all types of disputes against her employees. Plaintiffs contend this imbalance renders any promise by Lemarroy to arbitrate illusory.

The arbitration clause provides, in pertinent part:

> In consideration of Employee's employment by the Employer and the terms, mutual promises, covenants, and obligations set forth herein, and other good and valuable consideration, the Employer and Employee expressly acknowledge and agree that binding arbitration constitutes the sole and exclusive means of resolving disputes, controversies, or claims arising out of, involving, affecting, or related in any way to the employment relationship, conditions of employment, or termination of employment with the sole exception of the injunctive relief provided in Paragraph 8, above. . . .

> [T]he parties further mutually agree that final and binding arbitration shall be the sole and exclusive means of resolving all disputes arising out of, involving, affecting, or related in any way to the employment relationship between the Employer and Employee, conditions of employment, or termination of the employment relationship. . . .

> The Employer and Employee further agree to waive their respective rights to a trial by judge or jury, and instead agree to submit all such disputes exclu-

sively to final and binding arbitration pursuant to the provisions of the Federal Arbitration Act. Nothing in this Paragraph ... shall limit or abrogate the Employer's rights to the injunctive relief afforded by Paragraphs 5(d) and 8 of this Agreement.

Paragraph 8, titled "Enforcement," states:

Employee agrees that any breach of his/her obligations under Paragraphs 5, 6, or 7 of this Agreement will cause the Employer irreparable injury for which the Employer has no adequate remedy at law. Accordingly, Employee agrees that in the event of any breach or threatened breach by Employee of his/her obligations under Paragraphs 5, 6, or 7 of this Agreement, the Employer shall be entitled, in addition to any and all other remedies available, to seek and obtain injunctive and/or other equitable relief to require specific performance of, or to prevent a breach of Employee's obligations under Paragraphs 5, 6 or 7 of this Agreement. Employee further agrees that the Employer may have such injunctive relief without posting a bond.

Paragraph 5(d), titled "Breach of Confidentiality Provisions," provides:

Employee acknowledges and agrees that, if there is a breach of the provisions of this Paragraph 5, the Employer shall be entitled to an injunction restraining Employee from further breaching or violating the provisions of this Paragraph 5, and further agrees that the loss and damages suffered by virtue of any breach are incapable of being made certain. Nothing contained herein shall be construed as prohibiting or otherwise limiting the Employer from pursuing any other remedies for such breach. Employee further agrees that the Employer shall be entitled to said

injunction without hearing and without positing a bond.

 Mutuality of obligation is unnecessary to enforce an arbitration provision so long as the underlying contract is supported by adequate consideration. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 757 (Tex.2001). Where the arbitration clause is one part of a contract, the rest of the agreement provides the consideration. *In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 607 (Tex.2005) (citing *FirstMerit Bank,* 52 S.W.3d at 757). Continued employment can also be considered acceptance of an arbitration provision. *In re Halliburton,* 80 S.W.3d 566, 569 (Tex. 2002). An agreement to arbitrate does not fail for lack of consideration merely because one party reserves the right to seek judicial relief in certain limited circumstances. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 757–58 (Tex.2001); *see Lawrence v. Comprehensive Bus. Serv's Co.,* 833 F.2d 1159, 1163 (5th Cir.1987) ("[the] right to seek injunctive relief in court and [the] right to arbitrate are not incompatible.") (internal citation omitted); *Quinn v. EMC Corp.,* 109 F.Supp.2d 681, 684 (S.D.Tex.2000).

 The arbitration provisions at issue in this action were each part of overall employment agreements. The rest of the employment agreement, thus, provided consideration for the arbitration clause. *See In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 607 (Tex.2005) (citing *FirstMerit Bank,* 52 S.W.3d at 757). In addition, the Plaintiffs' continued employment with Lemarroy also was sufficient consideration for the arbitration provision. *See In re Halliburton,* 80 S.W.3d 566, 569 (Tex.2002). Lemarroy reserved the right, under the employment agreement, to file for injunctive relief for any breach or threatened breach of: (1) the covenant of confidentiality, (2) the covenant not to

compete; and (3) the restriction on soliciting customers and vendors. Such a right to injunctive relief is sufficiently limited such that the reservation of litigation rights does not destroy mutuality. *See Quinn v. EMC Corp.*, 109 F.Supp.2d 681, 684 (S.D.Tex.2000); *see also Lawrence v. Comprehensive Bus. Serv's Co.*, 833 F.2d 1159, 1163 (5th Cir.1987). Plaintiffs have not demonstrated the arbitration provision lacked consideration or that the provision failed for lack of mutuality, and cannot avoid arbitration on this ground.

## C. *Procedural Unconscionability*

Plaintiffs assert that the arbitration agreement is invalid on procedural unconscionability grounds because, allegedly: (1) the Plaintiffs were not given an opportunity to read the agreement; (2) the company representatives told the Plaintiffs they had to sign the agreement at the time the agreement was presented to them; (3) the company failed to provide adequate time to review the agreement; (4) a company representative did not advise the Plaintiffs that they could or should consult legal counsel before signing the agreement; (5) Plaintiffs were not informed that the agreement was negotiable;(6) Lemarroy had a policy not to provide a copy of the agreement to her employees; and (7) the company advised the employees as to their obligations under the noncompete and confidentiality provisions, but did not discuss the arbitration provisions at all, misrepresenting that the agreement was solely about their rights and obligations relating to the noncompete and confidentiality provisions. Lemarroy disputes all of these allegations. Lemarroy asserts that on November 14, 2001 and December 3, 2002 the Plaintiffs attended an employee meeting conducted by an attorney where the arbitration requirements for employees were explained and discussed.

▆ Apart from the misrepresentation claim, none of Plaintiff's procedural allegations relate specifically to the arbitration clause, but rather to the formation of the overall employment agreement. These claims, therefore, would appear to raise issues that may only be decided by an arbitrator. *Hill,* 367 F.3d 426, 429 (5th Cir.2004) (citing *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 472 (5th Cir.2002)). Even if the Court were to consider Plaintiff's procedural unconscionability claims, however, the formation of the arbitration clause would still be upheld as valid.

▆ A contract is not negated because one party may have been in a more advantageous bargaining position. *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 679 (Tex.2006); *AdvancePCS,* 172 S.W.3d at 608. Whether an agreement is procedurally unconscionable rests on whether the contract results in unfair surprise or oppression. *Id.* As a general rule, contracts of adhesion are not automatically unconscionable. *AdvancePCS,* 172 S.W.3d at 608.

▆ Parties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 134 (Tex.2004); *see G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392, 393 (Tex.1982). Generally, a party who signs a contract is presumed to know its contents. *Eubank v. First Nat'l Bank of Bellville,* 814 S.W.2d 130, 134 (Tex.App.-Corpus Christi 1991, no pet.). When a party signs a contract containing an arbitration provision, the party does not have to be told about the provision, but is presumed to know the contents of the contract. *In re Border Steel, Inc.,* 229 S.W.3d 825, 834 (Tex.App.-El Paso 2007, pet. denied) (citing *In re FirstMerit Bank,* 52

S.W.3d at 758); *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 371 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

■ Failing to read an agreement, even when a party claims there was no opportunity to read or understand the agreement, does not excuse a party from arbitration. *Sosa v. PARCO Oilfield Serv's, Ltd.*, Civ. Action No. 2:05–CV–153, 2006 WL 2821882, at *5 (E.D.Tex. Sept. 27, 2006) (citing *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex.1996)); *Border Steel*, 229 S.W.3d at 835 (citing *In re Big 8 Food Stores*, 166 S.W.3d at 878) (holding that whether terms were insufficiently explained or the consequences of those terms not understood were immaterial to the validity of an agreement to arbitrate); *Serv. Corp. Int'l v. Lopez*, 162 S.W.3d 801, 810 (Tex.App.-Corpus Christi 2005, no pet.) (citing *In re H.E. Butt Grocery Co.*, 17 S.W.3d at 371) (finding allegations that arbitration provision and its implications were not explained were insufficient to amount to procedural unconscionability).

■ In addition, an arbitration provision is not procedurally unconscionable simply because an employer made it a part of a "take it or leave it" offer to at-will employees. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 608 (Tex.2005) (citing *In re Halliburton*, 80 S.W.3d at 572). Allegations of misrepresentations and pressure to sign an arbitration agreement quickly are insufficient to demonstrate procedural unconscionability. *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1077 (5th Cir.2002). The only cases under Texas law in which an agreement was found procedurally unconscionable involve situations in which a party was literally incapable of understanding the agreement. *See Barker v. Halliburton Co.*, 541 F.Supp.2d 879, 885 (S.D.Tex.2008) (citing *Fleetwood*, 280 F.3d at 1077). This is not the case herein.

Reviewing all of Plaintiffs' allegations of procedural unconscionability in light of the applicable Texas law, none of the allegations are sufficient to invalidate the arbitration provision for procedural unconscionability. There is no allegation that any plaintiff was mentally incapable of understanding the agreement, rather that the circumstances surrounding the signing of the agreement made reading and understanding the document difficult. Such allegations are insufficient to prove procedural unconscionability under Texas law, and the arbitration provision cannot be invalidated on this ground.

### D. *Substantive Unconscionability*

■ Plaintiffs further assert that the arbitration clause subjects the Plaintiffs to such great costs as compared to what the Plaintiffs would face in federal court, that the additional expense from arbitration would prohibit the Plaintiffs from vindicating their claims. The arbitration provision invokes the American Arbitration Association ("AAA") Rules for arbitration of disputes under the contract and the Plaintiffs assert that the allegedly extraordinary costs associated with these Rules make the arbitration clause substantively unconscionable. The test for substantive unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 678 (Tex.2006). An arbitration agreement may be substantively unconscionable if the existence of large arbitration costs could preclude a litigant from vindicating her federal statutory rights. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex.2001) (citing *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).

■ An arbitration agreement's mere silence with respect to costs and fees, by itself, is insufficient to invalidate the agreement. *Green Tree*, 531 U.S. at 91, 121 S.Ct. 513. The party opposing arbitration must prove the likelihood of incurring such costs. *Id.* Where plaintiffs have provided evidence of estimated costs, but no evidence that they will actually be charged the fees identified, there is insufficient evidence to establish substantive unconscionability. *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 796 n. 12, 797 (Tex.App.-Houston [14th Dist.] 2007, pet. denied); *see In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex.2001); *see also Ford v. Lehman Bros.*, Civ. Action No. H–07–2693, 2007 WL 4437165, at *5, 2007 U.S. Dist. LEXIS 92848, at *17 (S.D.Tex. Dec. 18, 2007). Where language in the arbitration clause permits the use of less expensive methods to arbitrate claims, the court may disregard affidavits regarding the estimated cost of arbitration before more expensive arbitrators. *TMI, Inc.*, 225 S.W.3d at 797. The AAA rule permitting deferral or reduction of fees in the event of extreme hardship, mitigates against completely avoiding arbitration due to costs. *Id.* at 796 n. 13.

Here, the arbitration provision states that the arbitrator will be an attorney or retired judge experienced in employment law. There is no requirement that the arbitrator be an AAA arbitrator or an arbitrator from outside the local area. There is no requirement that the arbitrator be paid AAA fees. The parties can collectively arbitrate their claims in the local area, likely resulting in a substantial reduction in costs compared to the Plaintiffs' estimates. Plaintiffs estimate they could collectively face AAA arbitration fees between $8,000 and $14,750, with each Plaintiff bearing the cost of approximately $2,000.00. Plaintiffs assert that they earn between $12,480.00 to $33,800.00 per year. Plaintiff's figures, however, are just estimates of what arbitration may cost. Even if the AAA rules are applicable to the fees paid and even if AAA fees are charged, these fees may be deferred or reduced should the Plaintiffs demonstrate excessive hardship, mitigating any concerns about excessive arbitration costs. *See TMI, Inc.*, 225 S.W.3d at 796 n. 13.

The Plaintiffs have not put forth the specific and definitive evidence of the costs of arbitration that have been required by Texas courts. *See TMI, Inc.*, 225 S.W.3d at 796 n. 12, 797; *see also Ford v. Lehman Bros.*, Civ. Action No. H–07–2693, 2007 WL 4437165, at *5, 2007 U.S. Dist. LEXIS 92848, at *17 (S.D.Tex. Dec. 18, 2007); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex.2001). Finding there are lower cost alternatives to the Plaintiffs' estimated arbitration costs as well as fee-deferral or reduction provisions should the Plaintiffs demonstrate financial difficulty in pursuing arbitration, the Court does not hold that the arbitration provision is substantively unconscionable as applied to the Plaintiffs. Further, the employment agreement contemplates mediation prior to arbitration, providing additional evidence of an intent to seek low cost alternatives in dispute resolution where possible.

The Court has now reviewed and rejected each of Plaintiffs' objections whether the parties formed a valid arbitration provision. The Plaintiffs, therefore, each entered into a valid and enforceable arbitration provision with Lemarroy. The Court must next turn to whether Plaintiffs' FLSA claims fall into the arbitration provision.

E. *Whether Plaintiffs Claims Fall Within the Scope of the Arbitration Clause*

■ The pertinent part of the arbitration provision states:

[T]he Employer and Employee expressly acknowledge and agree that binding arbitration constitutes the sole and exclusive means of resolving disputes, controversies, or claims arising out of, involving, affecting or related in any way to the employment relationship, conditions of employment, or termination of employment with the sole exception of the injunctive relief provided.

. . . .

[T]he parties further mutually agree that final and binding arbitration shall be the sole and exclusive means of resolving all disputes arising out of, involving, affecting or related in any way to the employment relationship between the Employer and Employee, conditions of employment, or termination of the employment relationship—including without limitation any claim of wrongful termination, breach of implied contract, discrimination, unlawful harassment or retaliation, defamation, intentional infliction of emotional distress, violation of public policy, or any federal, state or local law, and disputes, controversies, or claims arising out of or related to the action of the Employee's other employees or customers—whether asserted during the employment relationship or after termination of the relationship, regardless of whether such claims are asserted by the Employer or by Employee.

Plaintiffs bring FLSA claims against Lemarroy for overtime pay owed as a result of their employment with Lemarroy. Such claims clearly fall within the broad employment arbitration clause in each Plaintiffs' employment agreement.

### F. *External Legal Constraints to Arbitration*

■ Having found that the Plaintiffs and Lemarroy entered into a valid arbitration agreement and that the arbitration clause covered the Plaintiffs' claims, the second step in the Court's arbitration analysis is to determine whether legal constraints, external to the parties' agreement, foreclose the arbitration of the claims. *Folse v. Richard Wolf Medical Instruments Corp.*, 56 F.3d 603, 605 (5th Cir.1995); *R.M. Perez & Assocs., Inc.*, 960 F.2d 534, 538 (5th Cir.1992). The party resisting arbitration must demonstrate that Congress clearly intended to preclude the parties from waiving their judicial remedies or that another ground exists at law or equity (such as fraud or coercion) which permits the parties' contract or agreement to be revoked. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). The Fifth Circuit has held that FLSA claims are subject to arbitration. *See Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 298–99 (5th Cir.2004). Plaintiffs point to no other federal statute or policy to demonstrate that Plaintiffs' FLSA claims can not be submitted to arbitration.

### G. *Existence of Conditions Precedent*

■ Lastly, Plaintiffs assert that the arbitration provision is subject to two conditions precedent that were not fulfilled by Lemarroy prior to seeking arbitration, thereby allegedly barring Lemarroy from seeking relief in arbitration. First, Plaintiffs contend that the arbitration provision requires the parties to attempt informal resolution of their disputes prior to arbitration. If the informal resolution was unsuccessful, Lemarroy could only then initiate arbitration by serving notice on the opposing party within thirty days of learning of the dispute. Plaintiffs assert that Lemarroy has not engaged in information mediation nor given proper notice under the arbitration provision, either of which should prohibit her from seeking arbitra-

tion. The relevant part of the arbitration clause provides:

> [T]he Employer and Employee mutually agree that they will first attempt to resolve by direct discussion all disputes, controversies, or claims arising out of, involving, affecting or related in any way to the employment relationship between the Employer and Employee, conditions of employment, or termination of employment-whether asserted during the employment relationship or after termination of the employment relationship . . .
>
> Arbitration shall be initiated in the following manner: Within thirty (30) days after becoming aware of the dispute, either party may serve written notice of intention to arbitrate upon the other party by certified mail, return receipt requested. . . . Notice may be served upon Employee by mailing written notice to ——————————————. Within thirty (30) days of the written notice to arbitrate, the parties shall mutually agree upon a single neutral arbitrator. . . . If the parties are unable to agree upon an arbitrator within thirty days, they shall apply to a Court of competent jurisdiction for appointment of an arbitrator.

■■■ "Questions of timeliness or whether a party fulfilled the procedural requirements of an arbitration provision are considered questions of procedural arbitrability." *General Warehousemen & Helpers Union Local 767 v. Albertson's Distribution, Inc.*, 331 F.3d 485, 488 (5th Cir.2003) (citing *Oil, Chemical and Atomic Workers' Int'l Union, Local 4-447 v. Chevron Chemical Co.*, 815 F.2d 338, 341 (5th Cir.1987)). In general, questions of procedural arbitrability are decided by the arbitrator. *Id.* (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 555, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)).

This general rule has one exception: "'a court could deny arbitration only if it could confidently be said not only that the claim was strictly 'procedural' . . . but also that it should operate to bar arbitration altogether.'" *Id.* (quoting *John Wiley*, 376 U.S. at 557–58, 84 S.Ct. 909). "[S]uch cases are likely to be rare indeed." *Id.*

The Fifth Circuit has interpreted this exception to mean that "a court will not order arbitration if 'no rational mind' could question that the parties intended for a procedural provision to preclude arbitration and that the breach of the procedural requirement was clear." *General Warehousemen*, 331 F.3d at 488 (quoting *Chevron*, 815 F.2d at 342) (internal quotation marks omitted). If a rational mind could differ as to the resolution of the procedural question, the court leaves the issue of procedural compliance to the arbitrator. *See id.* There is authority for the premise that a defendant need not comply with the procedural and timing requirements of a arbitration provision, where the plaintiff in the action allegedly breached the arbitration agreement by bringing the action against the defendant in the first place. *See, e.g., Matter of River Brand Rice Mills v. Latrobe Brewing Co.*, 305 N.Y. 36, 110 N.E.2d 545, 547 (1953); *Greene Steel & Wire Co. v. F.W. Hartmann & Co.*, 235 N.Y.S.2d 238, 241 (N.Y.Sup.1962). In such a situation, a defendant may avoid the timing and notice provisions of an arbitration clause where the limits are ambiguous or application of the limits would be unreasonably harsh when applied to the facts. *Latrobe Brewing Co.*, 110 N.E.2d at 547.

Plaintiffs contend that Lemarroy first became aware of the overtime dispute on May 8, 2008 when Lemarroy was served with the Plaintiffs' Complaint. The Court must note that based on this allegation alone, Plaintiffs demonstrate that they breached the agreement by not seeking

informal mediation or arbitration of their overtime claims as required by the employment agreement. Plaintiffs, therefore, are seeking to require Lemarroy to comply with the same provisions of the employment agreement the Plaintiffs violated by filing this action.

According to the Plaintiffs, Lemarroy never engaged in any informal discussion or mediation of the Plaintiffs' claims prior to filing this motion to compel arbitration. Lemarroy filed her motion to compel arbitration on June 19, 2008, more than forty days after the Plaintiffs contend that Lemarroy became aware of the dispute.[1] Lemarroy, thus, allegedly failed to comply with the mediation and timely notice conditions precedent prior to seeking arbitration.

The arbitration agreement states that "Arbitration shall be initiated in the following manner" and then states the thirty day notice provision; however, nothing in the arbitration agreement states that a failure to comply with written notice provision bars arbitration. It is unclear whether the timely notice provision, when compared to other arbitration provisions that *expressly* preclude arbitration for a failure to comply with timely notice, demonstrates an intent between the parties to preclude arbitration for failing to notify the other party within thirty days. Further, the term "written notice" is undefined. Lemarroy answered on May 23, 2008, asserting that the Plaintiffs failed to comply with the arbitration provision by filing their action. A rational mind could easily view this answer as providing notice of an intent to invoke the arbitration provision in the employment agreement. In addition, it is unclear how Plaintiffs' clear breach of the language of the arbitration provision should be weighed in comparison with Lemarroy's

alleged breach, and whether the former should excuse latter's alleged failure to expressly comply with the arbitration agreement. This Court, therefore, cannot say with confidence that, as required by the Fifth Circuit, 'no rational mind' could question that the parties intended for the procedural provisions in the employment agreement to preclude arbitration and that the breach of the procedural requirement in the arbitration provision was clear. Therefore, the *John Wiley* exception is inapplicable to the procedural issue before the court and an arbitrator must resolve whether Lemarroy complied with the procedural requirements, if any, of the arbitration provision.

Were the *John Wiley* exception to be applicable, however, applying the procedural provisions of the employment agreement would be unreasonably harsh given the circumstances surrounding the plaintiffs' initial breach of the agreement. *See Latrobe Brewing Co.*, 110 N.E.2d at 547. Given that the Plaintiffs clearly breached the same terms of the employment agreement well before Lemarroy's alleged breach, the Plaintiffs cannot now enforce those terms to the detriment of Lemarroy. Finding the application of the procedural provisions to be unreasonable where Lemarroy was made a defendant by Plaintiffs' filing of a complaint in breach of the agreement, the Court would hold, if called upon to rule on the *John Wiley* exception, that Lemarroy was excused from strict compliance with the timeliness provisions of the arbitration agreement and that arbitration should proceed in this action.

## H. *Conclusion*

Having found enforceable arbitration agreements between the Plaintiffs and Le-

---

1. This argument is inapplicable as to plaintiff Manuel Cuevas, as Lemarroy was already trying to invoke arbitration when Cuevas was added to the lawsuit.

marroy which cover the Plaintiffs' FLSA claims, and that no policy or procedural reason exists to exclude arbitration of Plaintiffs' claims, the Court hereby **GRANTS** Lemarroy's Motion to Compel Arbitration. The Court **ORDERS** this action stayed pending the resolution of Plaintiffs' claims before an arbitrator. Further, the issue of whether the parties should be ordered to try to resolve these issues by informal discussion (as is also contemplated by the employment agreements) is hereby left to the good discretion of the arbitrator. The parties are to agree upon an arbitrator within 30 days of this order and provide the court with the name of that individual. The Court will remain available should the parties be unable to agree upon an arbitrator and seek the Court's appointment of an impartial arbitrator. The parties are hereby **ORDERED** to file the appropriate pleadings and/or documents with this Court within thirty (30) days of the arbitrator's filing rulings to effectuate the conclusion of this matter.