## MORRIS v. CARTER.

No. 14646.

Court of Civil Appeals of Texas.

Dallas.

Sept. 25, 1953.

Rehearing Denied Oct. 23, 1953.

Harris & Lee and Edmund R. Yates, Dallas, for appellant.

White & Yarborough, Dallas, for appellee.

DIXON, Chief Justice.

An automobile owned by James Edward Brown and mortgaged to appellant for $901.78 was seriously damaged by fire. Repair work amounting to $650 was done by appellee, who operates a garage. Thereafter Brown defaulted in his mortgage payments, so appellant sued him for debt and foreclosure. Appellee intervened, alleging that appellant, the mortgagee, had orally agreed to pay appellee for the repairs. Judgment by default was rendered for appellant against defendant Brown who has not appealed. A jury returned a verdict favorable to appellee, and judgment was rendered for appellee against appellant for $650 plus an attorney's fee of $250, a total of $900, which judgment is the subject of this appeal.

Appellant's main point on appeal is that the oral contract relied on by appellee is unenforceable under the Statute of Frauds, Art. 3995, sec. 2, Vernon's Ann.Civ.St., because the undisputed evidence shows it to be an agreement to pay for the debt default or miscarriage of another.

Brown, the owner and mortgagor of the car, was an employee of appellee. There is testimony in the record to this effect: Brown tried to get his employer, appellee, to repair the car but appellee refused to enter into a contract with Brown; afterward on several occasions appellee went to appellant's office where conversations took place between appellee and appellant's agent, Dudley; in regard to repairing the car; Dudley had already obtained several estimates on the job; it was agreed that appellee would repair the car for $650; Brown, though present on one of these occasions, participated but little, if any, in the discussion. Appellee then proceeded to do the repair work.

There is also testimony in the record that defendant Brown continued as an employee of appellee, and was one of several of appellee's mechanics who worked on the car and received his regular pay in cash from his employer for work so performed; appellee did not withhold any of Brown's pay as a credit on the repair bill; .when the repairs were completed appellant's agent, Dudley, told appellee to turn possession of the car over to Brown, which appellee did; appellant did not pay, but, according to appellee, kept "stalling around," finally informing appellee that a check from appellant was supposed to have been sent to appellee through the insurance company but the insurance company had gone "broke"; appellee's contract was with appellant, not with an insurance company; appellee had had similar deals with appellant on other occasions, and had not before had any trouble getting his money; appellee had previously filed a suit against Brown, alleging that Brown owed the bill, but he had done so only because he understood it was necessary in order to sequestrate the car, which was in Brown's possession. In this case a receiver was appointed, who took over possession of the sequestrated car from appellee. The receiver later sold the car and the proceeds have been paid into the registry of the court.

Here is appellee's testimony as to the conversation between himself and appellant's agent, Dudley:

"Mr. Brown and I went down to talk to Mr. Dudley, and he had these figures from these other dealers, Chevrolet dealers and another garage, and they were all between seven and eight hundred dollars to fix this car, and he asked me if I would be interested in fixing the car on a contract. And I told him, 'Well, I don't know.' And he said, 'Well, you figure out what you can fix it for on a contract, make all repairs necessary to put it back in good shape, and let me know what it is,' so I agreed then that I would do the job for $650, and because of the fact that Mr. Brown worked for me and some of the repairs could be from time to time. In other words, they would not have to be rushed out. * * * Then Mr. Dudley told us, 'Go ahead.' That sounded like a good deal to him, and they would see that we were paid; * * *."

Here is Brown's testimony as to the conversation between appellee and Dudley:

"(By Mr. Yarborough): Isn't it a fact that Mr. Carter told Mr. Dudley when the three of you all had the conversation together that he would not put the repairs on this car unless the Union Acceptance Company would agree to pay for it? A. That's right. Unless they would give him their OK. * * * Q. Now then, Mr. Brown, isn't it true that the Union Acceptance Company, when you and Mr. Carter went down there and talked to Mr. Dudley, told Mr. Carter when the job was completed to let you have the car? A. Yes."

[1–3] The proper application of Art. 3995, sec. 2, of the Statute of Frauds, has produced a variety of discussions and not a few conflicting decisions. 20 Tex.Jur. 219, 224. We believe this to be the rule of law applicable here: When the language used by the parties is inconclusive, it is proper to look to their intention in order to determine whether their agreement binds the promisor to a primary or a secondary obligation. The intention of the parties may be found by a consideration of all the circumstances. The fact finder may consider the purpose of the agreement, the consideration, previous dealings of the parties, whether the goods or services were rendered before or after the promise, the benefits flowing to the promisor, and many other facts and circumstances reasonably tending to show the intention of the contracting parties. Shahan-Taylor Co. v. Foremost Dairies, Inc., Tex.Civ.App., 233 S.W.2d 885, writ ref.; Hacker v. Whitney Dam Lumber & Const. Co., Tex.Civ.App., 225 S.W. 2d 225, writ ref.; Kell Cleaners, etc., v. Commercial Standard Ins. Co., Tex.Civ. App., 199 S.W.2d 673; Evans v. Shaw, Tex.Civ.App., 268 S.W. 1037. Applying the above principle to this case, we conclude

that there was sufficient evidence to support the jury's finding to special issue No. 1 that appellant agreed to pay appellee $650 to repair the automobile. Appellant's first point is overruled.

Appellant's second point is that the court erred in submitting an issue inquiring whether appellant had agreed to subordinate his chattel mortgage lien to the lien claimed by appellee. The court rendered a money judgment for appellee for $900. The judgment does not attempt to foreclose or even mention a lien in favor of appellee. Consequently the submission of the issue was immaterial and harmless, especially in view of the jury's answer to special issue No. 1. Appellant's second point is overruled.

Appellant's third point is that it was improper to allow appellee an attorney's fee. This point is predicated on the contention that the agreement was secondary, not primary. Since the jury found in effect that the obligation was primary, we think the allowance of an attorney's fee was proper under Art. 2226, V.A.C.S. Appellant's third point is overruled.

Appellant's fourth, fifth and sixth points complain of the refusal of the court to submit issues whether appellee voluntarily delivered possession of the car to Brown, whether appellee had notice of appellant's lien, and whether appellee attempted to fix a lien in his own behalf. In view of the jury's answer to special issue No. 1, and the nature of the judgment rendered, we think the refusal of the court to submit the issues was immaterial and harmless. Appellant's fourth, fifth, and sixth points are overruled.

We find no reversible error in the record. The judgment of the trial court is affirmed.